J-S08021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1105 MDA 2021 |

Appeal from the Decree Entered July 21, 2021
In the Court of Common Pleas of Berks County Civil Division at No(s):
129-2021 MH

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 10, 2022**

Appellant J.H. appeals from the order extending his involuntary commitment for psychiatric treatment with Appellee the Wernersville State Hospital (WESH).  Appellant challenges the sufficiency of the evidence for his commitment pursuant to 50 P.S. § 7305.  We affirm.

On September 18, 2020, Appellant was admitted to WESH.  Trial Ct. Op., 10/25/21, at 1.  On June 24, 2021, WESH filed a petition to extend Appellant's involuntary commitment for an additional 180 days pursuant to 50 P.S. § 7305 of the Mental Health Procedures Act (MHPA), 50 P.S. §§ 7101-7503.  **See id.**  On July 16, 2021, a mental health review officer held an audio-recorded phone hearing to determine whether the commitment should be extended.  **See id.**  Following the hearing, the officer recommended a certification of involuntary inpatient treatment for up to ninety days.  **See id.**

Appellant filed a petition for review of the certification pursuant to 50 P.S. § 7109 in the Court of Common Pleas. However, because the audio recording was indecipherable, the trial court scheduled a *de novo* hearing. On July 21, 2021, the trial court conducted an in-person hearing. At the hearing, the trial court heard testimony from Appellant's physician, Dr. Aziz Gopalani, Appellant's social worker, Cheyenne Port, and Appellant.

Dr. Gopalani testified that he is Appellant's treating psychiatrist, and that Appellant has a long history of mental illness and a diagnosis of schizoaffective disorder. *See* N.T. H'rg, 7/21/21 at 6. When he does not take his medication, Appellant hears voices. *Id.* at 9. Dr. Gopalani also stated that Appellant has been hospitalized several times since 2015, does not believe he is mentally ill, and does not want to take his medication. *Id.* at 6. Appellant was initially treated at Coatesville Hospital and a veterans' hospital. *Id.* at 9-10. In March 2020, Appellant was sent to Norristown State Hospital after criminal charges were filed against him in Chester County. *Id.* at 6. After being declared incompetent to stand trial, Appellant was transferred to WESH. *Id.* at 7.

At WESH, Appellant was compliant with treatment and taking his medication. WESH policy requires that if Appellant refused his medication, the doctors would administer it intravenously. *Id.* at 7. However, it appears that when Appellant is released from hospitalization, he refuses his medication and outpatient treatment. *Id.* at 8-9. Dr. Gopalani testified that Appellant does not want to share any information regarding his housing circumstances with

- 2 -

the treatment team. *Id.* at 21-22. At the time of the hearing, Dr. Gopalani was aware that Appellant had seventeen open criminal charges, including burglary, terroristic threats, theft by unlawful taking, possession of an instrument of crime, two counts of simple assault, and recklessly endangering another person.[1] *Id.* at 18-20. Dr. Gopalani testified that if discharged, Appellant would be a danger to himself and others because he does not take his medication and when he does not, he "becomes very wilder." *Id.* at 20.

Cheyenne Port testified that she is a licensed social worker at WESH. *Id.* at 24. She is Appellant's admitting social worker and has cared for him since September 2020. *Id.* at 24-25. She testified about Appellant's criminal history, including two prior convictions in July 2016 for terroristic threats, two counts of harassment.[2] *Id.* at 27. Appellant was convicted in June 2017 of terroristic threats and several counts of harassment. *Id.*

At the time of the hearing, Appellant had seventeen open charges that were pending at three separate dockets in the Chester County Court of Common Pleas. *Id.* at 27-28. Some of the charges stemmed from a single incident in November 2018, and included burglary, two counts each of terroristic threats, theft by unlawful taking, simple assault, and recklessly endangering another person. *Id.* at 28.

---

[1] *See* 18 Pa.C.S. §§ 3503, 2706, 3921, 907, 2701, and 2705, respectively.

[2] *See* 18 Pa.C.S. § 2709.

Further, Appellant has two pending November 2019 cases which include charges of terroristic threats and several counts of harassment. Additionally, Appellant has January 2019 charges for retaliation against a witness or victim and intimidation of a victim,[3] terroristic threats, stalking, [4] and harassment that are currently pending before the trial court. *Id.* at 29-30. *Id.* at 28-29.

Ms. Port testified that, for Appellant's discharge, the WESH treatment team recommended a structured and supportive setting such as a community residential rehabilitation program (CRR), which is a twenty-four hour, seven-day-a-week, staffed group home. *Id.* at 31. The hospital is currently Appellant's representative payee and Appellant has expressed suspicion and paranoia about going to that facility. *Id.* at 31-32.

Appellant testified that he is compliant with treatment and takes his medication. *Id.* at 35. However, he does not trust the hospital with his money. *Id.* Appellant averred that he was not a threat to himself or anyone else at the hospital and had not gotten into any fights there. *Id.* at 36. Appellant did not believe it was necessary for him to take eleven pills a day. *Id.* at 40.

At the conclusion of the hearing, the trial court entered an order affirming the certification of involuntary inpatient treatment for up to ninety days. Trial Ct. Op. at 1. Appellant timely appealed and filed a court-ordered

---

[3] *See* 18 Pa.C.S. § 4952.

[4] *See* 18 Pa.C.S. § 2709.1.

Pa.R.A.P. 1925(b) statement, which he subsequently amended on November 10, 2021. The trial court filed a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issue for our review:

1. Whether sufficient evidence was presented to support the involuntary commitment of [Appellant] where [Appellant's] treating psychiatrist['s] primary concern was [Appellant's] compliance with medication and the clear and present danger noncompliance would pose to [Appellant's] self or others was not sufficiently established and no nexus was established between [Appellant's] mental illness diagnosis and his pending criminal charges?

Appellant's Brief at 4 (formatting altered).[5]

This Court reviews determinations pursuant to the MHPA to "determine whether there is evidence in the record to justify the [hearing] court's findings." ***In re S.M.***, 176 A.3d 927, 935 (Pa. Super. 2017) (citation omitted). This Court is "not bound by the hearing court's legal conclusions and must reverse if the evidence does not justify the hearing court's decision." ***Com. ex rel. Gibson v. DiGiacinto,*** 439 A.2d 105, 107 (Pa. 1981).

We briefly summarize the MHPA:

The MHPA provides for involuntary emergency examination and treatment of persons who are "severally mentally disabled and in need of immediate treatment." 50 P.S. § 7301(a). It then authorizes increasingly long periods of commitment for such persons, balanced by increasing due process protections in recognition of the significant deprivations of liberty at stake.

---

[5] In Appellant's Rule 1925(b) statement of errors complained of on appeal, he raised three issues. On appeal, Appellant has chosen to argue only the single issue presented. ***See*** Appellant's Brief at 4.

Accordingly, in applying the MHPA, we must take a balanced approach and remain mindful of the patient's due process and liberty interests, while at the same time permitting the mental health system to provide proper treatment to those involuntarily committed to its care.

**S.M.**, 176 A.3d at 930-31 (some citations omitted and formatting altered).

Section 7301(a) describes the circumstances under which a mentally disabled person may be subject to involuntary treatment:

Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself, as defined in [50 P.S. § 7301(b)].

50 P.S. § 7301(a).

Section 7301(b)(1) defines clear and present danger of harm to others, and Section 7301(b)(2) defines clear and present danger of harm to himself, in relevant part, as follows:

(1) . . . . For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

(2) Clear and present danger to himself shall be shown by establishing that within the past 30 days:

(i) the person has acted in such manner as to evidence that he would be unable, without care, supervision and the continued assistance of others, to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious

> physical debilitation would ensue within 30 days unless adequate treatment were afforded under this act; . . . .

50 P.S. § 7301(b)(1), (2)(i).

Section 7304 permits court-ordered involuntary treatment for up to ninety days. 50 P.S. § 7304(g). Section 7304(a)(2) states the criteria for involuntary treatment of a person that is already subject to involuntary treatment:

> (2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section [7301(b)] in fact occurred, and that his condition continues to evidence a clear and present danger to himself or others . . . . In such event, it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.

50 P.S. § 7304(a)(2). The **S.M.** Court clarified Section 7304(a)(2) as follows:

> [T]he petitioner need not relitigate the initial commitment and . . . . the trial court may consider a patient's original commitment as contained in that patient's commitment history as long as the patient's commitment history shows that the requisite behavior occurred in the past. If the patient challenges that original commitment, the burden is on the patient to show that the original commitment was improper.

**S.M.**, 176 A.3d at 936 (citations omitted and formatting altered).

In sum, a Section 7304(a)(2) petitioner must prove two factors. First, the petitioner, at a hearing, must "reestablish" the patient's prior conduct, which qualified as a clear and present danger to himself, to others, or both, "in fact occurred." **See** 50 P.S. §§ 7301(b)(1)-(2), 7304(a)(2). Second, the

petitioner must establish the patient's condition continues to evidence a clear and present danger to himself or others. 50 P.S. § 7304(a)(2).

Appellant argues that noncompliance with his medication, without more, is insufficient to prove that he is a clear and present danger to himself or others. *See* Appellant's Brief at 11. Appellant notes that although there were references to his criminal charges at the hearing, the record contains no factual basis for the charges or the manner in which they relate to his medication. *Id.* at 15. He contends that if the "clear and present danger" standard was to be applied this broadly, any person charged with a crime could find themselves deprived of their liberty when they express reluctance to take prescribed psychiatric medication. *Id.* at 18.

In support of his argument, Appellant cites *Gibson*, a case in which the appellant was institutionalized following his behavior in a group home, which included being caught extinguishing a burning newspaper in his room, possessing a piece of twisted coat hanger, and missing doses of Thorazine. *See Gibson,* 439 A.2d at 105-06. On appeal, our Supreme Court reversed the appellant's conviction because the newspaper and coat hanger incidents were not proof of an attempt to harm himself or others, and because there was no evidence "to show that [the appellant's] behavior changed as a result of missed doses of [Thorazine]." *Id.* at 107.

Additionally, Appellant cites *S.M.*, a case in which this Court reversed the 30-day involuntary commitment of an appellant who had been diagnosed with schizoaffective bipolar disorder but did not wish to take her medication.

**S.M.**, 176 A.3d at 929, 938. At the commitment hearing, the appellant's psychiatrist testified that the appellant was not sleeping or eating properly and had used racial slurs around other residents of the facility. **Id.** at 939. The psychiatrist did not testify as to the reasonable probability of death or serious bodily injury or serious physical debilitation that could occur as a result of the appellant's noncompliance. **Id.** at 938-39.

Neither of these cases are applicable to the instant matter. Unlike the appellant in **Gibson**, Appellant has an established history of violent behavior resulting in criminal charges and direct testimony was presented that this is a result of Appellant's failure to take his medication. **Cf. Gibson**, 439 A.2d at 107; **see also** N.T. at 18-20, 27-30. Unlike the appellant in **S.M.**, Appellant's criminal convictions and open charges included a litany of offenses such as terroristic threats, harassment subjecting another to physical contact, burglary, theft, simple assault, recklessly endangering another person, harassment, stalking, and retaliation against a witness which establish that, without his medication, Appellant is a clear and present danger to himself or others. **Cf. S.M.**, 176 A.3d at 939; **see also** N.T. at 27-30.

With respect to the nexus between Appellant's criminal charges and his refusal to take his medication, the trial court explained:

> Contrary to counsel's assertion, this [c]ourt made substantial inquiry during the hearing relevant to this precise issue. Dr. Gopalani as well as the social worker, Cheyenne Port, detailed the nature of the seventeen open charges pending against Appellant ranging from assault to possessing an instrument of crime with intent. It is this [c]ourt's understanding from the testimony of Dr. Gopalani that Appellant presents a very real risk of harm to

himself and to others based on his prior history and perhaps even more importantly, his multiple indications and expressions that he will not take his medications currently or in the future without some level of enforcement or supervision.

Appellant's history of refusing medication as well as his present indications to refuse medication in the future coupled with his record of pending charges concerns this [c]ourt. The credible testimony and evidence presented at the hearing leads this [c]ourt to the conclusion that there is a nexus between Appellant's noncompliance with his medication and a clear and present danger to his own health, safety and welfare, as well as that of others. It was additionally established that the hospital is using diligent efforts to develop a release plan that would initially provide some supervision to ensure that Appellant takes his prescribed medications.

Trial Ct. Op. at 5-6 (some formatting altered).

Based on our review of the record, we agree with the trial court's conclusions. As noted by the trial court, Dr. Gopalani and Appellant testified that Appellant does not wish to continue taking his medication and does not feel that his medication is necessary. *See* N.T. at 8-9, 20, 40. Dr. Gopalani testified that while Appellant is not violent or aggressive when medicated at the hospital, when Appellant does not take his medication, he becomes unpredictable and wild. *Id.* at 7-9, 20. Ms. Port testified extensively regarding Appellant's criminal history, including his convictions and open charges. *Id.* at 27-28. Therefore, we agree with the trial court that there is a factual nexus between Appellant's failure to take his medication and his criminal charges. Trial Ct. Op. at 5-6.

On this record, we agree with the trial court that there is sufficient evidence in the record to justify its findings that Appellant presents a clear

and present danger to himself or others. ***See S.M.***, 176 A.3d at 935; 50 P.S. §§ 7301(b)(1)-(2), 7304(a)(2). Therefore, we affirm the order extending Appellant's commitment.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/10/2022